IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| CITY OF PORTLAND and TENNESSEE MUNICIPAL LEAGUE RISK MANAGEMENT POOL, INC., | ) ) ) ) |
| Plaintiffs | ) ) |
| VS. | ) NO.: _____ ) |
| VOLUNTEER STATE BANK, | ) ) |
| Defendant | ) |

## COMPLAINT

The plaintiffs, City of Portland ("Portland") and Tennessee Municipal League Risk Management Pool, Inc. ("TML"), by and through counsel, for cause of action against Volunteer State Bank (the "Bank"), respectfully state as follows:

### I. JURISDICTION AND VENUE

1. This action is brought by Portland and TML against the Bank pursuant to Subpart B of Federal Reserve Regulation J (12 C.F.R. §§ 210.25 – 210.32), a law of the United States regulating funds transfers through the Fedwire system.

2. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331.

3. Venue in the Middle District of Tennessee is proper pursuant to 28 U.S.C. § 1391 in that the acts and omissions giving rise to the claims in this action occurred in this district.

### II. PARTIES

4. The City is a political subdivision of the State of Tennessee located in Sumner County, Tennessee.

{FB205870 / TML 4565 }

1

5. TML is a non-profit corporation organized and existing under the laws of the State of Tennessee with its principal offices located in Brentwood, Williamson County, Tennessee.

6. The Bank is a banking corporation organized and existing under the laws of the State of Tennessee with its principal office located in Portland, Sumner County, Tennessee.

### III. FACTUAL ALLEGATIONS

7. As of December 20, 2011, Karen Johnson was the recorder for the City. Part of Johnson's duties with the City was to manage the funds of the City, including funds which were deposited by the City into several accounts with the Bank.

8. On the morning of December 20, 2011, Johnson received an email which purported to be from the Better Business Bureau regarding a complaint a customer had filed against the City. Johnson opened the email to read its contents.

9. Later in the morning of December 20, 2011, after opening the email which purported to be from the Better Business Bureau, Johnson attempted to log-in via the internet to view the City's accounts with the Bank and to make a transfer of funds from the City's water and sewer account with the Bank. Johnson provided her user identification and password which she used to gain online access to the City's accounts with the Bank, but her computer screen told her that she had not succeeded in logging in.

10. After attempting to log-in for several moments, Johnson called the Bank and informed bank officials that she was having difficulty logging in. The bank reset Johnson's password, but she remained unable log in to the City's accounts with the Bank from her computer. Johnson informed Bank employees that another City employee's ID and password would be used to log-in to the accounts.

11. Johnson contacted another City employee, Patricia Keen, obtained her log-in credentials, and logged in and executed an order online for $115,681.21 to be transferred from the water and sewer account maintained by the City at the Bank to the account of Portland Natural Gas which was maintained by the City at Farmers Bank.

12. The following afternoon, December 21, 2011, an employee of the Bank called Johnson and told her that three (3) wire transfers totaling $174,930 had been made from the City's water and sewer account. The three transfer orders were supposedly originated by Karen Johnson. The legitimate transfer, which had been originated on December 20, 2011, indicated that it was by "Patricia Keen."

13. The Bank had been alerted about the three transfers totaling $174,930 because one of the transfers, in the amount of $60,080, was to go to an account for Mann Jewelers in Beachwood, Ohio. When Mann Jewelers received notice that it had received a wire transfer of $60,080, it notified its bank that it was not entitled to the money and eventually the Bank was also notified of the improper transfer. Mann Jewelers eventually caused the $60,080 to be transferred back to the City's account.

14. The other two wire transfers could not be reversed because the accounts to which the funds were transferred had been drained. One improper wire transfer went to "ELCW LLC" in Cherry Hills, NJ. This transfer was in the amount of $99,850. The other improper transfer was to "Ivars Gribuls" in Los Angeles, CA in the amount of $15,000.

15. The City's loss from the two unauthorized wire transfers is $114,850. The City had insurance coverage in the amount of $100,000 with TML for computer fraud. TML has paid the City $100,000 on this claim, and TML is subrogated to the rights of the City to the extent of $100,000.

16. On May 9, 2012, counsel for the City and TML wrote to the Bank demanding that the Bank refund the $114,850 of wire transfers from the City's account which were not authorized by the City. The Bank has failed and refused to repay any of the $114,850 which was transferred from the City's account without authority from the City.

## COUNT 1

17. Pursuant to Section 204(a) of Article 4A of the Uniform Commercial Code (adopted by the Federal Reserve as Appendix B to Subpart B of Regulation J), the Bank is required to refund the City $114,850 because the fraudulent orders to make the two wire transfers totaling this amount on December 20, 2011 were not authorized by the City and were not effective as orders of the City.

18. The fraudulent orders to make the two wire transfers totaling $114,850 are not effective against the City under Section 202(b) of Article 4A of the Uniform Commercial Code (adopted by the Federal Reserve as Appendix B to Subpart B of Regulation J) because the security procedure employed by the Bank was not a commercially reasonable method of providing security against unauthorized payment orders and the Bank did not accept the fraudulent payment orders in good faith.

19. The City is entitled to recover interest calculated pursuant to Section 506 of Article 4A of the Uniform Commercial Code from December 20, 2011 until the Bank refunds the $114,850 to the City.

## PRAYERS FOR RELIEF

1. That process be issued to the Bank and that it be required to answer in the time required by law;

2. That judgment be rendered in favor of the City and against the Bank in the amount of $14,850, plus interest from December 20, 2011, to the date of judgment;

3. That judgment be rendered in favor of TML and against the Bank in the amount of $100,000, plus interest from December 20, 2011, to the date of judgment; and,

4. That the City and TML receive any other further and general relief to which it may appear that they are entitled.

Respectfully submitted,

FARRAR & BATES, LLP

/s/ Mark E. McGrady
WILLIAM N. BATES (BPR No. 003578)
MARK E. McGRADY (BPR No. 30026)
211 Seventh Avenue North, Suite 500
Nashville, Tennessee 37219
Tel. (615) 254-3060 - Fax (615) 254-9835
bill.bates@farrar-bates.com
mark.mcgrady@farrar-bates.com

{FB205870 / TML 4565 }    5

Case 3:12-cv-01316   Document 1   Filed 12/20/12   Page 5 of 5 PageID #: 5